[No. 821-3. Division Three. July 16, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES CALVIN BRIGGINS, *Appellant.*

*Richard L. Cease, Public Defender,* and *Byron G. Powell, Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondent.

GREEN, C.J.—Defendant appeals from a jury conviction of the crime of robbery.

The jury could have found the following facts: On September 9, 1972, defendant, accompanied by two 15-year-old girls and two male companions, traveled from Moses Lake to Spokane in an automobile owned by the father of one of the girls. Near Spokane the defendant and his two male companions discussed a robbery of the Gold Coin Food Mart. Upon arrival in Spokane, a rifle and a pistol in the automobile were loaded and the car was parked about 2 blocks from the Gold Coin. The defendant and his two companions left the vehicle and walked toward the store. Defendant went into a phone booth where he made a telephone call and his two companions entered the food mart. A witness observed the defendant leave the telephone booth, walk to the front of the building, and stand outside

the two doors. One of the defendant's two companions who entered the store struck a checker on the side of her head with a gun, knocking her unconscious. Then the pair in the store removed $1,900 from the cash register and placed it in a brown paper sack. Witnesses observed the defendant and his two companions leave the store. The two girls testified that the defendant and his two companions returned to the automobile and together they traveled to Pasco. En route to Pasco, defendant inquired of one of his companions about the person who had been hit. On arrival in Pasco, the $1,900 taken from the store was divided equally between the defendant and his two companions.

The next day the Washington State Patrol, near Ellensburg, stopped the automobile in which the defendant, his two male companions and the two girls were occupants, for a traffic violation. A pistol, a rifle and an empty brown paper sack were found in the vehicle. The three males were arrested for various offenses and booked into the Kittitas County jail; each had in excess of $500 on his person.

■ First, defendant contends the trial court erred in denying his motion for arrest of judgment or, in the alternative, for a new trial upon the ground of insufficient evidence. We have carefully reviewed the entire record and conclude there is substantial evidence from which the jury could find defendant guilty of the crime charged. *State v. Green*, 2 Wn. App. 57, 70, 466 P.2d 193 (1970); *State v. Mathews*, 4 Wn. App. 653, 484 P.2d 942 (1971).

■ Second, defendant contends the trial court erred in giving instruction No. 13 upon the ground that it was misleading and confusing when viewed alongside the other instructions. Instruction No. 13 is as follows:

If you find the defendant guilty of Robbery, you will be required to answer whether the evidence in this case establishes beyond a reasonable doubt that (1) Floyd James Page was an accomplice in said robbery; and (2) whether he was armed with a deadly [weapon] at the time of the commission of the offense.

With respect to answering this interrogatory, you are

instructed that the words "deadly weapon" shall include pistol, revolver or other firearm.

This definition of "deadly weapon" shall apply only to answering this interrogatory.

For the purpose of this instruction, if one of two participants in a robbery is armed with a deadly weapon, then both are considered to be so armed.

The purpose of this instruction was to comply with our decision in *State v. Willis*, 5 Wn. App. 441, 487 P.2d 648 (1971). In that case, we held that if one of two participants in a robbery is armed with a deadly weapon, then both are considered to be so armed for purposes of RCW 9.95.015 requiring a mandatory minimum sentence. We find no error in the giving of this instruction and when read in light of all of the instructions do not believe that the jury could have been confused by it. The only claim to confusion is that the term "accomplice" should not have been used. "Accomplice" was properly defined in instruction No. 8.

▇ Third, defendant contends the court erred in permitting Diane Coleman to testify with respect to the conversation that she overheard between the defendant and his two male companions just prior to their arrival in Spokane, during which they planned the robbery of the Gold Coin Food Mart, on the ground that such testimony constituted hearsay. We disagree.

Miss Coleman testified:

Q Did Mr. Briggans [defendant] say anything?
A They were all three—all three of them said they were going to rob the Gold Coin.

In *State v. Barr*, 9 Wn. App. 891, 894, 515 P.2d 840 (1973), the court stated:

The issue was not the truth of that or any other statement, but whether the three men had such a conversation. . . . Her testimony was not admitted as an exception to the hearsay rule; it was not hearsay.

. . . The court recently clarified the meaning of *Bruton* [*Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968)] in *Dutton v. Evans*, 400 U.S. 74, 88, 27 L. Ed. 2d 213, 91 S Ct. 210 (1970):

> Neither a hearsay nor a confrontation question would arise had [the witness'] testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements. From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.

If an instruction as to the limited probative value of Diane Coleman's testimony about the conversation had been requested, the trial judge should have given it. However, in the absence of a request for a limiting instruction, the failure to give such an instruction is not error. *State v. Adams*, 5 Wn. App. 366, 487 P.2d 218 (1971).

Defendant, acting pro se, filed an additional brief in which he raised additional errors which are hereinafter set forth.

 First, he claims he was denied effective assistance of court-appointed counsel because that attorney failed to object to certain evidence or ask certain questions.

(a) Defendant states his counsel did not object to the admission of the pistol found in the vehicle in which he was traveling when it was stopped by a state patrol officer near Ellensburg, Washington, and the occupants arrested. In his brief defendant admits he does not know the circumstances surrounding the patrolman's acquisition of the pistol; however, he argues that his attorney should have conducted a hearing to determine the legality of the search which produced the pistol. We disagree. The record does not reveal when the weapon was found. However, the record does disclose that the pistol was found under the front seat on the passenger's side of the car; that the defendant was riding in the back seat on the passenger side; and that the pistol was loaded when discovered. Further, the arresting officer testified he noticed a rifle lying along the driver's seat. Defendant does not claim that the search was unlaw-

692

ful nor assert any basis for objection to the admission of the weapon. Our review of the record discloses no basis for objection to the admission of the weapon. The prosecutor, in his answering brief, states that all occupants of the car were arrested and booked into the Kittitas County jail; for this reason, the vehicle had to be impounded and its contents inventoried; and that defendant's court-appointed counsel knew these facts. In those circumstances, the discovery of the weapon was proper and admissible. *State v. Pristell,* 3 Wn. App. 962, 478 P.2d 743 (1970); *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968). The failure to argue a groundless matter does not constitute a denial of effective counsel. *State v. Stevens,* 69 Wn.2d 906, 421 P.2d 360 (1966); *State v. Stockman,* 70 Wn.2d 941, 425 P.2d 898 (1967). Here the record contains no facts nor does defendant allege any facts that would support his position. An unsupported conjectural assertion not supported either by the record or by the one making the conjectural assertion need not be considered on appeal. *State v. Williams,* 9 Wn. App. 663, 513 P.2d 1045 (1973).

(b) The defendant complains his counsel did not object to the in-court identification of him by two witnesses on the ground that it was tainted by a prior impermissible photo identification. We disagree. The two witnesses were 15-year-old girls. These girls accompanied the defendant in the automobile from Moses Lake to Spokane, from Spokane to Pasco where they spent the night, and the following morning to Ellensburg where the defendant was arrested. Both girls knew the defendant and spent a considerable amount of time with him. This is not a case of a fleeting glance. The identification of the defendant's photograph prior to trial by these two witnesses could not result in an irreparable misidentification or in any manner taint the in-court identification. Counsel's failure to object is understandable and on the record before us would have been frivolous.

(c) The defendant asserts he was prejudiced by his

counsel's use of the term "mug shots" in cross-examination of one of the State's witnesses. Such examination was as follows:

Q Is it Mrs. Edson?
A Yes.
Q Mrs. Edson, were you shown any mug shots?
A I beg your pardon?
Q Were you shown any mug shots after this incident happened by the police?
A Yes, I was.
Q How many mug shots were you shown, do you recall?
A I can't remember. No.
Q Were the pictures all about the same size that you saw?
A They were just like if you took pictures, if you took someone's pictures—they were all the same size, yes.
Q Could you identify these individuals as being the ones in the photos?
A No, I didn't.

The use of the term "mug shot" in this context by the defendant's counsel, when viewed against all the evidence, did not taint the proceeding thereby depriving the defendant of a fair trial. *State v. Allen,* 72 Wn.2d 38, 431 P.2d 590 (1967); *State v. Thomas,* 9 Wn. App. 160, 510 P.2d 1137 (1973). In fact, defendant was not identified by this witness from those "mug shot" photos.

The test of competency of court-appointed counsel in a criminal case is whether, after reviewing the entire record, the defendant was afforded a fair trial. Considering defendant's challenge to the competency of his court-appointed counsel in light of the entire record, we are of the opinion defendant was afforded a fair trial. *State v. Lei,* 59 Wn.2d 1, 365 P.2d 609 (1961); *State v. Stockman,* 70 Wn.2d 941, 425 P.2d 898 (1967); *State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972).

■ Second, defendant, relying upon *State v. Mims,* 9 Wn. App. 213, 511 P.2d 1383 (1973), asserts that because the information did not specifically allege that he was subject to the possibility of an enhanced penalty under RCW

9.95.040,[1] the court erred in submitting the deadly weapon issue to the jury. We disagree.

RCW 9.95.015 provides where

there has been an *allegation* and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, . . . the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime.

(Italics ours.) Aiding and abetting another who commits robbery with a deadly weapon subjects the aider and abettor to the enhanced penalties of RCW 9.95.040. *State v. Willis*, 5 Wn. App. 441, 487 P.2d 648 (1971).

The amended information in the instant case alleged the defendant aided and abetted one Floyd Page in the robbery of the Gold Coin Food Mart, "said Floyd James Page being

---

[1]RCW 9.95.040 provides:

"Within six months after the admission of a convicted person to the penitentiary, reformatory, or such other state penal institution as may hereafter be established, the board of prison terms and paroles shall fix the duration of his confinement. The term of imprisonment so fixed shall not exceed the maximum provided by law for the offense of which he was convicted or the maximum fixed by the court where the law does not provide for a maximum term.

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas."

at said time armed with a deadly weapon." In our view, the information meets the specific requirements of RCW 9.95.015, to wit: it alleged the accomplice was armed with a deadly weapon. *See State v. Sorenson, supra. State v. Mims, supra,* is distinguishable because the information in that case contained no allegation that the defendant was armed with a deadly weapon at the time he committed the crime of robbery.

Lastly, the defendant contends he was denied due process by the prosecution's suppression of favorable evidence. There is nothing in the record to support this contention. Matters not supported by the record cannot be considered. *State v. Williams,* 9 Wn. App. 663, 513 P.2d 1045 (1973).

Judgment affirmed.

MUNSON and MCINTURFF, JJ., concur.

Petition for rehearing denied August 26, 1974.

Review denied by Supreme Court November 4, 1974.